SH

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Damian Dudley, | No.  CV 19-01237-PHX-DGC (JZB) |
| Plaintiff, | |
| v. | **ORDER** |
| Chaplain Philip Maclaren, et al., | |
| Defendants. | |

Plaintiff Damian Dudley, who is currently confined in the Arizona State Prison Complex (ASPC)-Lewis, Barchey Unit in Buckeye, Arizona, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 5.)  Defendant Maclaren moves for summary judgment, and Plaintiff opposes the motion. (Docs. 22, 39.)[1]

**I.   Background**

On screening of Plaintiff's First Amended Complaint (Doc. 5) pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a First Amendment free exercise claim and a Religious Land Use and Institutionalized Persons Act (RLUIPA) claim against Chaplain Philip Maclaren based on his alleged failure to add Plaintiff, who is Muslim, to the 2017 Ramadan list. (Doc. 7.)  The Court ordered Defendant Maclaren to answer. (*Id.*)

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 25.)

Defendant Maclaren now moves for summary judgment and argues that Plaintiff failed to exhaust the available administrative remedies and that Plaintiff's rights under the First Amendment and RLUIPA were not violated.  (Doc. 22.)

**II.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material (a fact that might affect the outcome of the suit under the governing law) and that the dispute is genuine (the evidence is such that a reasonable jury could return a verdict for the nonmovant).  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968), but it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

**III.   Exhaustion**

    **A.   Legal Standard**

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37. Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Summary judgment is appropriate if the undisputed evidence shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a). If a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Albino*, 747 F.3d at 1171.

    **B.   Relevant Facts**

        **1.   Arizona Department of Corrections (ADC) Grievance Process**

ADC has adopted Department Order (DO) 802 to address prisoners' complaints regarding their conditions of confinement. (Doc. 23 (Def.'s Statement of Facts) ¶ 7.) Pursuant to DO 802, prisoners must first attempt to resolve their complaints through informal means, such as discussing the issue with staff or submitting an Inmate Informal

Complaint Resolution Form to their unit Correctional Officer (CO) III. (*Id.*) If the prisoner is unable to resolve the issue informally, the prisoner may submit a Formal Grievance to the unit CO IV Grievance Coordinator, who will log the grievance and forward it to the Deputy Warden for response. (*Id.* ¶¶ 10–12.) If the prisoner is not satisfied with the Deputy Warden's response, the prisoner may submit an Inmate Grievance Appeal to the ADC Director. (*Id.* ¶ 13.) The Director's decision is final and constitutes completion of the grievance process. (*Id.* ¶ 15.) If a prisoner does not receive a timely response from the designated prison official at any point during the grievance process, the prisoner may proceed to the next stage of the grievance process the day after the response was due. (Doc. 23-2 at 16 (DO 802 § 1.10).)

### 2. Plaintiff's Grievance Record

On May 3, 2017, Plaintiff sent an Inmate Letter to Chaplain Martinez requesting to add his name to the Ramadan participation list. (Doc. 23 ¶ 31.) On May 8, 2017, Defendant Maclaren received the Inmate Letter and responded to it the following day because Chaplain Martinez was on leave. (*Id.* ¶ 33.) Defendant Maclaren informed Plaintiff that: "I have received your request to participate in Ramadan. According to policy you should have requested this 30 days in advance. If we can accommodate you will be added to the list." (*Id.* ¶ 35.) On May 9, 2017, Senior Chaplain Kingsland added Plaintiff's name to the list of prisoners participating in Ramadan. (*Id.* ¶ 36.) Plaintiff's addition to the Ramadan participation list was memorialized in an attachment to a May 12, 2017 e-mail authored by Kingsland. (Doc. 24-1 at 30 (Maclaren Decl., Attach. 5).)

Grievance Coordinator Maryellen Ohshita avers that she conducted a review of the Barchey Unit's grievance logs for any grievances submitted by Plaintiff between May 1 and September 1, 2017 regarding his claim against Defendant Maclaren, and her search did not reveal any processed or unprocessed grievances submitted by Plaintiff regarding that claim. (Doc. 23-3 at 3 (Ohshita Decl. ¶¶ 6–7).)

Grievance Hearing Officer Rodreco Kepney avers that he conducted a search of ADC's grievance appeal log for Grievance Appeals submitted by Plaintiff between

January 1 and December 31, 2017, and his search only found one Director's level grievance filed by Plaintiff concerning an incoming piece of mail. (Doc. 23-2 at 8 (Kepney Decl. ¶¶ 32–33).) Kepney's search did not reveal any Grievance Appeals filed by Plaintiff regarding his religious claims against Defendant Maclaren. (*Id.* at 9 (Kepney Decl. ¶ 34).)

### C. Discussion

Defendant Maclaren has presented evidence that there was an administrative remedy available to Plaintiff. But Plaintiff was not required to continue the grievance process once the relief he sought—being added to the 2017 Ramadan list—was granted on May 9, 2017 and memorialized on May 12, 2017. *Harvey v. Jordan*, 605 F.3d 681, 687 (9th Cir. 2010) ("An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfied him, in order to exhaust his administrative remedies. Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised."); *Soto v. Arpaio*, No. CV 10-00679-PHX-GMS (JRI), 2010 WL 4116558, at * 4 (D. Ariz. Oct. 18, 2010) (inmate who filed a grievance requesting to see a psychiatrist "was not required to proceed to the next step in the grievance process" once he saw a psychiatrist). Because Plaintiff submitted all documents required for him to be placed on the Ramadan list, Defendant Maclaren's Motion for Summary Judgment will be denied on the issue of exhaustion and summary judgment will be granted to Plaintiff on this issue.

## IV. Religious Claims

### A. Legal Standards

#### 1. First Amendment

"Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see Shakur*, 514 F.3d 884-85 (noting the Supreme Court's disapproval of the centrality test and finding that the sincerity test in *Malik* determines

whether the Free Exercise Clause applies). If the inmate makes this initial showing, he must also establish that prison officials substantially burdened the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Shakur*, 514 F.3d at 884-85. A regulation that burdens the First Amendment right to free exercise may be upheld only if it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

### 2. RLUIPA

Under RLUIPA, a government may not impose a substantial burden on the religious exercise of a confined person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2); *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005).

### B. Relevant Facts

At the relevant time, prisoners' religious activities, access to religious materials, and religious diets were governed by ADC DO 904. (Doc. 23 ¶ 25.) Under this policy, ADC prisoners are permitted to declare a religious preference and may request religious privileges, including religious holiday diets, consistent with their designated religion. (*Id.* ¶¶ 26–27.)

In 2017, Ramadan started before sunrise on May 27, 2017 and ended at sunset on June 25, 2017. (*Id.* ¶ 28.) On May 3, 2017, Plaintiff submitted an Inmate Letter requesting to be added to the Ramadan participation list. (*Id.*) On May 9, 2017, Defendant Maclaren received the Inmate Letter and responded that although Plaintiff should have made his request earlier, he would be added to the list if possible. (*Id.* ¶ 35.) On May 9, 2017 Senior Chaplain Kingsland added Plaintiff's name to the list of prisoners participating in Ramadan. (*Id.* ¶ 36.) On May 12, 2017, Defendant Maclaren was copied on an e-mail from Kingsland which stated: "Attached is the memo for Ramadan and a list of participants." (*Id.* ¶ 37.) The list of participating prisoners included Plaintiff's name. (*Id.*)

On an unknown date, Associate Deputy Warden Galvan forwarded Kingsland's e-mail, including the attached list of participants, to contract food services staff J. Jordan of

Trinity Services Group. (*Id.* ¶ 38.) On May 23, 2017, Jordan sent a follow-up e-mail to Kingsland asking if anything had changed on the list; Plaintiff's name was still on the list. (*Id.*)

On June 1, 2017, Defendant Maclaren was copied on an e-mail from CO III Jackson regarding an Informal Complaint Resolution from Plaintiff complaining that his name was not on the kitchen's Ramadan meal list. (*Id.* ¶ 39.) That same day, Kingsland sent two e-mail responses stating, "He is on the Ramadan list. So, what is the issue?" and "From what I can find, there is no issue. Please see attachments." (*Id.*) Kingsland attached the participant list to his second response, and Plaintiff's name was still on the list of participants. (*Id.* ¶ 41.)

### C. First Amendment Analysis

The parties do not dispute that Plaintiff has a sincerely held religious belief. Thus, the Court must determine whether Plaintiff has established that Defendant Maclaren substantially burdened the practice of his religion. *Shakur*, 514 F.3d at 884-85.

The facts do not support a finding that Defendant Maclaren substantially burdened Plaintiff's religious practice. The undisputed evidence shows that Plaintiff asked to be placed on the Ramadan list on May 3, 2017, that he was placed on the list by at least May 12, 2017, and that the list was confirmed with the prison's food service provider on May 23, 2017. For some reason, Plaintiff was denied Ramadan meals by the kitchen staff, but there is no evidence that this resulted from any action or inaction by Defendant Maclaren. Plaintiff does not refute Defendant Maclaren's evidence that Plaintiff's name was still on the list as of May 23 and June 1, 2017. Instead, Plaintiff devotes most of his response to arguing that there is no specific policy that requires prisoners to submit their religious holiday request 30 days prior to that holiday and that Defendant Maclaren failed to visit the Barchey Unit between April 25, 2017 and June 25, 2017. (*See* Doc. 39 at 7–8.) But these arguments are immaterial to Plaintiff's claim because the evidence shows that his request was granted and he was placed on the participation list before Ramadan started. Plaintiff has not presented any evidence that Defendant Maclaren had anything to do with

the kitchen staff's failure to serve Plaintiff's Ramadan meals.  Because there is no evidence that Defendant Maclaren substantially burdened Plaintiff's religious practice, the Court will grant summary judgment to Defendant Maclaren on Plaintiff's First Amendment claim.

### D.     RLUIPA Analysis

As a preliminary matter, Plaintiff cannot sue for monetary damages under RLUIPA and may only sue Defendant Maclaren in his official capacity for prospective injunctive relief.  *See Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011) (holding that "appropriate relief" in RLUIPA was not sufficiently specific to abrogate state sovereign immunity with respect to money damages); *Wood v. Yordy*, 753 F.3d 899 (9th Cir. 2014) (holding that RLUIPA "does not authorize suits against a person in anything other than an official or governmental capacity"); *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 840 (9th Cir. 2012) (holding that "appropriate relief" provision in Religious Freedom Restoration Act, like RLUIPA, "could be read as authorizing only injunctive relief").  To the extent Plaintiff seeks prospective relief under RLUIPA, his claim is moot.  Ramadan for 2017 ended on June 25, 2017, and absent any indication in the record that Plaintiff reasonably expects to be removed or excluded from the Ramadan participation list in the future, his request for injunctive relief is moot.

Even if Plaintiff's RLUIPA claim was not moot, the RLUIPA substantial burden test is the same as that used under the First Amendment.  *See Warsoldier*, 418 F.3d at 995-96 (citing to First Amendment cases to determine what constitutes a substantial burden under RLUIPA); *see also Nelson v. Miller*, 570 F.3d 868, 877 (7th Cir. 2009) (the First Amendment and RLUIPA both use the substantial-burden test); *Meza v. Cal. Dep't of Corrs.*, No. 1:17-cv-00894-DAD-EPG, 2017 WL 5500625, at *5 (E.D. Cal. Nov. 16, 2017) ("[t]he RLUIPA substantial burden test is analyzed within the same Free Exercise Clause framework") (citing *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011)).  The Court has already determined that Plaintiff fails to present

any facts or evidence to show that Defendant Maclaren substantially burdened his religious practice.  Accordingly, Plaintiff's RLUIPA claim will be dismissed.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 22).

(2) Defendant's Motion for Summary Judgment (Doc. 22) is **granted**, and the action is terminated with prejudice.  The Clerk of Court shall enter judgment accordingly.

Dated this 7th day of December, 2020.

*David G. Campbell*
David G. Campbell
Senior United States District Judge